AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

| United States of America | ) |
|---|---|
| Plaintiff | ) |
| v. | ) Case No. 4:17-CR-40058-01 |
| Loren Brown | ) |
|  | ) Colorado Case No. 17-mj-01219-MEH |
| Defendant | ) |

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* Loren Brown,

who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☐ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. §371 CONSPIRACY TO DEFRAUD THE UNITED STATES
26 U.S.C. §7212(a) IMPEDING THE INTERNAL REVENUE SERVICE

Date: July 6, 2017

*Issuing officer's signature*

City and state: Sioux Falls, SD

Debra Peterson, Deputy Clerk
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

_____
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
JUL 06 2017
[signature]
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LOREN BROWN and<br>RANDY L. GARRISS,<br><br>　　　　　Defendants. | CR 17-40058 - 1<br>　　　　　　　 -2<br><br>REDACTED INDICTMENT<br><br>Conspiracy to Defraud the United<br>States; Impeding the Internal<br>Revenue Service<br><br>18 U.S.C. § 371;<br>26 U.S.C. § 7212(a) |

The Grand Jury charges:

COUNT 1.

**The Conspiracy:**

Beginning in approximately April 20, 2004 and continuing until approximately January 2016, all dates approximate and inclusive, in the District of South Dakota and elsewhere, the Defendants, Loren Brown (hereinafter "Brown") and Randy L. Garriss (hereinafter "Garriss") did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue, to wit: income taxes owed by Theodore "Ted" Nelson and Steven "Steve" Nelson.

**Parties, Persons, and Entities:**

At all relevant times:

Ted Nelson and his son Steve Nelson inherited a family farm and business in Sanborn County, South Dakota. The business was incorporated as Nelson Land Company in April 1975. They planted and sold grain, raised cattle, performed custom work for neighbors, ran hunting/lodging businesses, and leased out their land.

Together Ted and Steve Nelson formed 39 trusts, corporations, LLCs, and other entities, using the income from their farm to fund them.

In April 2004, Brown voluntarily became a trustee of over 20 of the various Nelson entities. In early 2011, Garriss voluntarily became a trustee for one of the Nelson trusts. Brown then voluntarily became a co-trustee of another Nelson trust with Garriss.

**Manner and Means By Which the Conspiracy was Carried Out:**

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

Ted and Steve Nelson conspired to evade the assessment and payment of their tax liabilities to the Internal Revenue Service (IRS) by agreeing to not file their tax returns, forming numerous sham trusts, opening bank accounts in the names of these trusts and other nominee names, and hiding their income and assets from the IRS. They accomplished this scheme by conspiring to employ John Sheridan (hereinafter "Sheridan") as the trustee of these numerous trusts.

[2]

Sheridan was also a signor on most of Ted and Steve Nelson's bank accounts until his death on February 27, 2011. IRS audits performed in 1999 and 2007 provided Ted and Steve Nelson with assessments. As a result, liens were placed against Ted and Steve Nelson's property on February 18, 2004. After the liens were placed, Ted and Steve Nelson conspired to transfer assets and bank accounts out of Ted Nelson's name in order to hide his assets from the IRS. Ted and Steve Nelson agreed to no longer file tax returns with the IRS. After Steve Nelson began to have problems with the IRS, his assets and bank accounts were transferred to trusts using Sheridan as the trustee. When Ted and Steve Nelson received income, they transferred money to one of their numerous trusts. Ted and Steve Nelson opened several bank accounts using fictitious taxpayer identification numbers. Ted Nelson also became a member of a sovereign citizens group called the "republic of south dakota." These schemes were used by Ted and Steve Nelson to defraud the United States Government by impeding and impairing the IRS in the ascertainment, assessment, and collection of their correct income tax liabilities.

Ted Nelson met Brown and Sheridan at an antigovernment meeting in Washington. Brown first acted as trustee and successor trustee for the Nelsons in 2004, along with Sheridan. Sheridan, Brown, and Garriss lived in the Lamar, Colorado area. As Sheridan's death neared, Garriss voluntarily became a trustee for a Nelson trust. Brown then voluntarily became a co-trustee.

Brown and Garriss conspired with the Nelsons and each other in the Nelsons' efforts to defraud the United States Government by impeding and impairing the IRS in the ascertainment, assessment, and collection of the Nelsons' correct income tax liabilities.

**Overt Acts:**

In furtherance of the conspiracy, and to affect the objects thereof, the following overt acts were committed in the District of South Dakota:

1. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #1 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

2. April 20, 2004 - Brown accepted the successor trustee position for Cottonwood Properties #2 to replace the first trustee, Sheridan if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

3. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #3 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

4. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #4 to replace the first

trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

5. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #5 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

6. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #6 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

7. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #7 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates.

8. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #8 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Steve Nelson held ownership in the 100 trust certificates.

9. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #9 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Steve Nelson held ownership in the 100 trust certificates.

10. April 20, 2004 - Brown accepted the position as successor trustee for Cottonwood Properties #12 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson Land Company for Blue Chip II held ownership in the 100 trust certificates.

11. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #13 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company, Inc. held ownership in the 100 trust certificates. Ten days later, Steve Nelson, Ted Nelson, Patricia Nelson (Ted Nelson's wife), and Sheridan agreed to sell property transferred to Cottonwood Properties #13. By participating in the layering of entities, Brown assisted in placing the real estate beyond the reach of the IRS.

12. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #20 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson trust Blue Chip I held ownership in the 100 trust certificates. Four days earlier, Steve Nelson, Ted Nelson, Patricia Nelson, and Sheridan agreed to sell property transferred to Cottonwood Properties #20.

13. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #21 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson trust Morris Creek Enterprises held ownership in the 100 trust certificates.

Four days earlier, Steve Nelson, Ted Nelson, Patricia Nelson, and Sheridan agreed to sell property transferred to Cottonwood Properties #21. Brown assisted in placing the real estate beyond the reach of the IRS.

14. April 20, 2004 - Brown accepted the position as successor trustee for Cottonwood Properties #22 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson trust MAN, BTO held ownership in the 100 trust certificates.

15. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Cottonwood Properties #23 to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Nelson Land Company held ownership in the 100 trust certificates. Four days earlier, Steve Nelson, Ted Nelson, Patricia Nelson, and Sheridan agreed to sell property transferred to Cottonwood Properties #23. Brown assisted in placing the real estate beyond the reach of the IRS.

16. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Morris Creek Angus to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Steve Nelson's daughter Elizabeth Marie Nelson held ownership in the 100 trust certificates.

17. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Anthony Acres to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Man, BTO held ownership in the 100 trust certificates.

18. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Rooster Land Management to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Steve Nelson held ownership in the 100 trust certificates, then transferred the ownership of the certificates to Elizabeth Marie Nelson on this same date.

19. April 20, 2004 - Brown was appointed as successor trustee for Country Clipper to replace the first trustee, Sheridan, and successor trustee, Steve Nelson, if they were not able to act on behalf of the Nelsons. Patricia Nelson held ownership in the 100 trust certificates, then transferred the ownership of the certificates to Elizabeth Marie Nelson on this same date.

20. April 20, 2004 - Brown signed meeting minutes accepting the successor trustee position for Berg Properties to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Nelson entity Blue Chip I held ownership in the 100 trust certificates.

21. April 20, 2004 - Brown was appointed as successor trustee for Reserve Land Management to replace the first trustee, Sheridan, if he was not able to act on behalf of the Nelsons. Steve Nelson held ownership in the 100 trust certificates, then transferred the ownership of the certificates to Elizabeth Marie Nelson on this same date.

22. October 22, 2004 - Brown, as the trustee, signed trust meeting minutes appointing Steve Nelson as successor trustee for Rolling Hills Properties. As trustee, Brown canceled the ownership of the 100 trust

certificates of Anthony Acres and distributed the certificates to Ted and Patricia Nelson equally.

23. October 22, 2004 - Brown, as the trustee, signed a Certificate of Trust for Argus Hunt Club and filed it with the Sanborn County Register of Deeds on April 6, 2005.

24. October 22, 2004 - Brown, as the trustee, signed a Certificate of Trust for Rolling Hills Properties and filed it with the Sanborn County Register of Deeds on April 11, 2005.

25. October 26, 2004 - Brown signed a Notice of Affidavit and Trust Agreement as the trustee for Argus Hunt Club. This document was filed at the Sanborn County Register of Deeds on April 6, 2005.

26. October 26, 2004 - Brown, as the trustee, signed a Certificate of Trust for Prairie Hills Farms and filed it with the Sanborn County Register of Deeds on April 6, 2005.

27. October 28, 2004 - Brown signed a Notice of Affidavit and Trust Agreement as the trustee for Rolling Hills Properties. This document was filed at the Sanborn County Register of Deeds on April 6, 2005.

28. October 28, 2004 - Brown signed a Notice of Affidavit and Trust Agreement as the trustee for Prairie Hills Farms. This document was filed at the Sanborn County Register of Deeds on April 6, 2005.

29. March 1, 2005 - Brown and Sheridan set up Reserve Capital Funds for investment purposes on behalf of the Nelsons. Steve Nelson was the beneficiary and Brown was the settlor.

30. September 28, 2005 - Brown, as the trustee, signed a Certificate of Trust for Prairie Hill Farms and filed it with the Sanborn County Register of Deeds on September 29, 2005.

31. September 28, 2005 - Brown, as the trustee, signed a Certificate of Trust for Rolling Hills Properties and filed it with the Sanborn County Register of Deeds on September 29, 2005.

32. September 28, 2005 - Brown, as the trustee, signed a Certificate of Trust for Argus Hunt Club and filed it with the Sanborn County Register of Deeds on September 29, 2005.

33. October 10, 2007 - Brown signed a warranty deed as trustee for Argus Hunt Club to James River Lodge Investments, LLC (both are Nelson entities). The deed transferred land from one Nelson trust to another.

34. February 17, 2011 - Garriss voluntarily became the new trustee for Reserve Land Management, and Sheridan and Steve Nelson submitted documentation of this to Bankwest.

35. March 5, 2011 - Brown voluntarily became co-trustee of Reserve Land Management. Garriss and Steve Nelson submitted documentation of this to Bankwest.

36. March 7, 2011 - Garriss and Brown signed Brown's co-trustee acceptance letter for Reserve Land Management and submitted this document to Bankwest.

37. March 8, 2011 - Brown signed the signature card for Nelson entity Reserve Land Management DBA Prairie Hill Enterprise & Farm's Bankwest account #-4772. Brown used Steve Nelson's home address as the address on the account. Brown became the only signor after Sheridan's death.

38. November 28, 2011 - Brown executed a purchase agreement with David and Ruth Estabrook on behalf of the Nelson trust Prairie Hills Farms. The Estabrooks paid $339,250 for the land.

39. May 22, 2015 (approximately) - Brown and Garriss (via telephone), Steve Nelson, and Mark Meier (who rented Nelson land for farming purposes) held a conference call at Steve Nelson's residence. Brown and Garriss became angry with Meier. Brown, Garriss, and Steve Nelson tried to convince Meier that Meier owed the Nelsons money. Brown and Garriss told Meier not to listen to anything that the IRS says; the IRS is all wrong. They also told Meier that the subpoena he responded to for the trial of Ted and Steve Nelson was not legitimate because it did not have a stamp or seal on it. Brown and Garriss told Meier that attorney Gregory Protsch received the only legitimate subpoena. Brown and Garriss told Meier that Steve Nelson's attorney, Brian Kirby, was working for the IRS.

40. May 27, 2015 - On a conference call between Garriss and Meier, Garriss threatened to take the Nelson farming land away from Meier if Meier did not provide the Nelsons with money in 72 hours.

41. May 29, 2015 - Steve Nelson and Garriss filed Statements in Support of Verified Motion for Judgement of Acquittal Notwithstanding the Verdict with the United States District Court in response to Ted and Steve Nelson's guilty verdicts. In this document, Garriss stated that he and Brown acted as trustees for the Nelsons and negotiated deals on their behalf. Steve Nelson stated in this document that Garriss was the trustee and had negotiated on his behalf.

42. May 31, 2015 - Garriss and Brown sent a letter to Meier to cease and desist farming operations.

43. June 2, 2015 - Brown, Garriss, and Steve Nelson called the Sanborn County Sheriff's office to have Meier arrested for trespassing. Meier was merely tending to his crop on the Nelson land.

44. August 19 - 31, 2015 - Brown and Garriss signed and sent two cease and desist farming operations letters to Meier on behalf of the Nelsons.

45. September - October 2015 - Brown, Garriss, and Steve Nelson held discussions with Carl Buenning and his son Jonathan regarding "selling" the remaining Nelson land to the Buennings in an effort to put the Nelsons' land beyond the reach of the IRS prior to their sentencing date. Garriss and Brown assisted Ted and Steve Nelson by representing them as their trustees during this attempted deal.

46.  November 2015 - Garriss set up a new Nelson trust, the E&J Fund.

47.  January 5, 2016 - Garriss signed a Protest and Demand for Administrative Review. He signed for himself and on behalf of Brown as trustees for Steve Nelson and the Nelsons' trusts. This letter was received by the IRS on this date.

48.  January 6, 2016 - Brown, Garriss, and Steve Nelson called Revenue Officer Richard Wallin. Wallin was the revenue officer working the Nelsons' jeopardy assessment. Garriss told Wallin that he and Brown were the trustees for Prairie Hills Farms Trust. Steve Nelson said he was not the trustee or beneficiary of the trust. Steve Nelson said his children Elizabeth and Joseph were the beneficiaries. Brown and Garriss said they resided in Colorado. Garriss and Brown said they were not attorneys, CPAs, or enrolled agents.

all in violation of 18 U.S.C. § 371.

## COUNT 2.

Beginning in approximately April 20, 2004 and continuing until approximately January 2016, all dates approximate and inclusive, in the District of South Dakota and elsewhere, the Defendants, Loren Brown (hereinafter "Brown") and Randy L. Garriss (hereinafter "Garriss"), did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws. Among other acts, Brown and Garriss did so by mailing and causing the mailing to the IRS of a Protest and Demand for Administrative Review on behalf of Ted and Steve Nelson. Garriss signed on his own behalf and that of Brown as

trustees for Steve Nelson and the Nelsons' trusts. The letter was received by the IRS on January 5, 2016,

all in violation of 26 U.S.C. § 7212(a).

A TRUE BILL:

"REDACTED"

_____
Foreperson

RANDOLPH J. SEILER
UNITED STATES ATTORNEY

By: _____

[14]